IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 1:15-CR-164 |
| v.      ) | |
| ) | The Honorable Claude M. Hilton |
| ALI SHUKRI AMIN,    ) | |
| ) | Hearing Date: February 13, 2023 |
| Defendant. ) | |

**RESPONSE TO DEFENDANT'S
POSITION ON SUPERVISED RELEASE VIOLATIONS**

The defendant, Ali Shukri Amin, has violated the conditions of his supervised release by associating with a known felon, John Walker Lindh, and by using an unmonitored device, a laptop with a Linux operating system (Linux OS), to circumvent the software used by the Probation Office to monitor and screen his internet activity. As demonstrated in his position paper, Amin's primary defense is that the Court erred in its handling of prior proceedings involving the supervised release conditions and therefore he should avoid consequences for his intentional violations. But Amin's arguments are unpersuasive. The conditions of release—and the probation officer's instructions specifying the means for enforcing those conditions—were properly imposed. Amin flagrantly violated them to engage in similar types of behavior that led to his prior conviction. Given the egregiousness of the violations, the similarity of the violations to the conduct that led to his prior conviction, and the leniency that the Court previously afforded him, the Court should sentence Amin to two years of imprisonment, followed by continued supervision under the same terms and conditions.

 A. **The Probation Officer's Instructions to Amin Were Appropriate Methods of Fashioning the Means and Details of Amin's Conditions of Release.**

In challenging the allegation that he violated his conditions of release by using an

1

unmonitored device, Amin argues that the Court improperly promulgated the relevant conditions of release and impermissibly delegated authority to the probation officer to impose conditions of release. As demonstrated below, however, the probation officer's instructions were permissible to set forth the means and details of a court-ordered condition.

It is well established that "courts may use nonjudicial officers, such as probation officers, to support judicial functions, as long as a judicial officer retains and exercises ultimate responsibility." *United States v. Comer*, 5 F.4th 535, 547 (4th Cir. 2021) (quoting *United States v. Miller*, 77 F.3d 71, 77 (4th Cir. 1996)). Of course, "courts 'can't delegate core judicial functions such as the authority to decide the amount of a fine or restitution payment, or whether a defendant must attend a treatment program.'" *Id.* (quoting *United States v. Van Donk*, 961 F.3d 314, 327 (4th Cir. 2020)). But it is permissible for district courts to allow probation officers to "fashion the means or details of court-ordered" conditions, *id.* at 547, such as "internet-access determinations," *id.* at 548. "[A]s long as the court orders the broad principle guiding the condition of release and retains the ultimate authority over revoking release, the court may allow the probation officer to fill in many of the details necessary for applying the condition." *Id.* at 547.

Here, the probation officer's instructions, at least insofar as they related to the monitoring and screening of Amin's internet usage, permissibly implemented the means and details of a court-ordered condition. At Amin's sentencing, the Court imposed a special condition that required Amin "be subject to any screening or monitoring of internet use, *as directed by the probation officer*." ECF No. 20 at 4 (emphasis added). Soon before Amin began his supervised release, the probation officer sought to modify Amin's conditions of release to provide for greater specificity regarding the monitoring to which Amin would be subjected. *See* ECF No. 43 at 2. At the hearing on July 24, 2020, the Court determined that the preexisting special condition about internet

2

monitoring/screening already covered the proposed modifications. *See* ECF No. 59-1 at 16-21, 23. While declining to add the proposed modifications as conditions, the Court was clear that the requirements raised by the probation officer to be "perfectly reasonable" instructions under the preexisting conditions and directed Amin to comply with them. *Id.* at 23. Accordingly, after the hearing, the probation officer instructed Amin to follow the specific monitoring requirements. ECF No. 43 at 3.

In addition, at the start of his supervised release, Amin and the probation officer signed an "ED/VA Computer Monitoring Program Participant Agreement" in which Amin agreed, among other things, to the following:

- that he would "not use any computer systems that have not been authorized by the Court or probation officer";
- that he would "not . . . attempt to . . . circumvent . . . or disable any restrictions established by the probation officer, Internet Service Provider, or monitoring software";
- that he would "not change . . . the current operating system on any authorized computer without pre-approval and authorization by the Court or probation officer"; and
- that he would not "use any software program or device designed to hide, alter or delete records/logs of computer use, Internet activities, or the files stored on [his] computer."

ECF No. 59 at 9. To carry out the monitoring, the probation officer instructed Amin to enroll in the computer monitoring program called "RemoteCOM." ECF No. 43 at 2.

Amin's primary complaint is that the instructions, and the RemoteCOM software used by the probation officer, were overbroad because the special condition allowed only *internet* monitoring/screening, not *computer* monitoring/screening. *See* ECF No. 60 at 4, 6-7. But that argument is unpersuasive. Computers, after all, are a common way of connecting to the internet. The probation officer's instructions and use of RemoteCOM were a reasonable means of screening and monitoring internet activity. Indeed, it is the government's understanding that the Probation

3

Office uses RemoteCOM to screen and monitor internet activity when such a condition of release is imposed.

Further, the alleged violation focuses on Amin's use of the unmonitored device to engage in activity over the *internet*. As described in the Petition, Amin used the unmonitored device "to correspond with known extremist and discuss extremist views," and to "conceal his ongoing online communications." ECF No. 43 at 4. The allegations themselves relate directly to the probation officer's prerogative to screen and monitor Amin's internet usage.

At the end of the day, there is no dispute that Amin understood and knew that he was subject to the probation officer's instructions about the monitoring when he decided to violate them. Prior to the July 24, 2020 hearing, Amin submitted pleadings in which he quoted the probation officer's proposed requirements—which shows that Amin had them in writing. *See* ECF No. 38 at 2-3. At the July 24, 2020 hearing, the Court expressly signed off on the requirements, holding that they were reasonable instructions that Amin had to follow. After that hearing, Amin never sought to challenge, clarify, or obtain modification of the Court's ruling. In the meantime, Amin completed the monitoring paperwork and enrolled in the RemoteCOM software, and since then, he has known the probation officer was monitoring his activities. Under these circumstances, the Court should reject Amin's attempt to defend his decision to violate these instructions by arguing that they were improperly issued more than two years ago.

Finally, Amin devotes many pages of his brief to challenging the probation officer's instructions restricting him from possessing, viewing, accessing, or using extremist/terroristic materials and from communicating with known extremists. But, as Amin himself recognizes in his position paper, the government is not asking the Court to find him in violation of those instructions. *See* ECF No. 60 at 1 n.2. In fact, the government has moved to dismiss those bases

for violations alleged in the Petition. *See* ECF No. 59 at 11. Accordingly, Amin's arguments with respect to those allegations should be deemed moot.

### B. Amin's Challenges to the Special Condition Requiring Internet Monitoring/Screen Have No Merit.

Amin also argues that "the condition on computer monitoring is … untethered to any particular conduct or rational." ECF No. 60 at 10. It is unclear whether Amin is arguing against a violation based on the Probation Office's instructions regarding use of unmonitored devices (i.e., Standard Condition 3) or a violation based on the monitoring of Amin's internet activity (i.e., Special Condition 2). Either way, Amin's argument falls flat.

The appropriate time for Amin to challenge his conditions has long passed. Amin raises this issue with the Court for the first time, seven-and-a-half years after the Court ordered Amin's conditions of release at his sentencing while he was represented by counsel. A defendant cannot bring a facial challenge to the conditions of supervision that were imposed as part of his original sentence during a subsequent revocation proceeding. *United States v. Johnson*, 138 F.3d 115, 118 (4th Cir. 1998); *see also Van Donk*, 961 F.3d at 325-26 (clarifying that *Johnson* "refers to facial challenges," but a defendant "may bring an as-applied challenge in revocation proceedings"). "If [the defendant] found those conditions objectionable, he should have raised his objections in a timely appeal of that initial sentence." *Johnson*, 138 F.3d at 118. Unlike the present case, the Fourth Circuit cases to which Amin cites in support—*Shiraz* and *Ellis*—were direct appeals from the courts' imposition of conditions of release. *See United States v. Ellis*, 984 F.3d 1092, 1098 (4th Cir. 2021); *United States v. Shiraz*, 784 F. App'x 141, 142 (4th Cir. 2019).

Here, Amin's argument amounts to a procedurally barred facial attack on his conditions. The Fourth Circuit explained in *Van Donk* that "[a]n as-applied argument in a revocation proceeding doesn't challenge the special condition's facial validity, but rather its application to a

particular act by the probationer." *Van Donk*, 961 F.3d at 326. Applying that standard here, Amin's challenge is a facial attack because his argument is devoid of any connection to the particular acts in the Petition. Instead, Amin challenges his conditions by arguing that there was a procedural error *at sentencing* because Court failed to articulate why internet monitoring served the relevant sentencing factors and why lesser restrictions were ineffective. ECF No. 60 at 12-13. As a result, under *Johnson* and *Van Donk*, Amin failed to raise his facial challenge in a timely manner and cannot now challenge them during his revocation hearing. *Johnson*, 138 F.3d at 118; *Van Donk*, 961 F.3d at 325-26.

Further, even assuming Amin's facial challenge was not procedurally barred, it would still fail. Amin's nefarious use of the internet as a means of supporting ISIS is a central tenant of the facts in support of his guilty plea. *See* ECF No. 7. As the government explained in its position paper, Amin admitted that he used his technical expertise and the internet to amass thousands of followers on Twitter, communicate with individuals about how to circumvent law enforcement, and create a pro-ISIS website. ECF No. 59 at 3. The basis for monitoring Amin's internet usage is self-evident from the facts to which Amin admitted. And Amin provides no basis for concluding that Standard Condition 3, which requires Amin to follow the instructions of the probation officer, is somehow facially invalid.

    **C.**    **The Court Should Not Exclude Amin's Statements About John Walker Lindh in the Prior Proceedings.**

Amin argues that the Court should not rely on statements that he made in prior proceedings about John Walker Lindh because he was denied his right to counsel under Rule 32.1. These statements are relevant because they show that Amin was familiar with Lindh when they met in late 2021. As explained below, there is no basis for the relief that Amin seeks.

The Sixth Amendment right to counsel does not apply to supervised release hearings. *See*

*Chavez v. Robinson*, 12 F.4th 978, 998 (9th Cir. 2021); *United States v. Sterling*, 959 F.3d 855, 860 (8th Cir. 2020); *United States v. Islam*, 932 F.3d 957, 963 (D.C. Cir. 2019); *United States v. Boultinghouse*, 784 F.3d 1163, 1171 (7th Cir. 2015). Rule 32.1, however, provides that a defendant has a right to counsel when facing a revocation or modification of supervised release. Fed. R. Crim. P. 32.1(b)(2)(D), (c)(1); *see also* 18 U.S.C. § 3006A(a)(1)(E) ("Representation shall be provided for any financially eligible person who . . . is charged with a violation of supervised release or faces modification, reduction, or enlargement of a condition, or extension or revocation of a term of supervised release.").

Assuming for the sake of argument that Amin was entitled to counsel at the hearings in 2020 addressing his conditions of release (even though his conditions were not modified), there is no basis for the relief that he seeks. Amin does not cite a single case to support excluding his statements in those proceedings at the upcoming revocation hearing. In other contexts, the Fourth Circuit has refused to apply the exclusionary rule to supervised release revocation hearings, including when the government seeks to introduce evidence that it obtained in violation of the Fourth Amendment, *see United States v. Armstrong*, 187 F.3d 392, 394 (4th Cir. 1999), or the Fifth Amendment, *see United States v. Ka*, 982 F.3d 219, 220 (4th Cir. 2020). There is even less justification for applying the exclusionary rule in this context, when the government did not elicit Amin's statements in violation of any right to counsel.

In any event, at the revocation hearing, the government will introduce additional, independent evidence to prove that Amin knew Lindh was a convicted felon when they met.

**D.   The Court May Consider Amin's Possession of ISIS and Other Extremist Material Under § 3553(a).**

Amin also argues that the Court cannot consider his relevant conduct—including his communications with others about violent jihad and terrorism, his possession of ISIS propaganda,

7

and his handwritten notebook containing instructions on, among other things, disposing bodies, evading surveillance, committing identity theft, and fleeing to Europe—because that evidence is protected by the First Amendment. ECF No. 60 at 16-17. But the Supreme Court has rejected this very argument as an overbroad application of the First Amendment.

"[T]he sentencing authority has always been free to consider a wide range of relevant material." *Payne v. Tennessee*, 501 U.S. 808, 820-21 (1991); *United States v. Tucker*, 404 U.S. 443, 446 (1972) ("[A] judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come."). Relevant here, as Amin's own authority explains, "the Constitution does not erect a *per se* barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment." *Dawson v. Delaware*, 503 U.S. 159, 165 (1992).

To be sure, the Supreme Court has applied some limitations to the admission at sentencing of evidence that may otherwise be protected by the First Amendment. In *Dawson*, the Court held that the admission of evidence concerning the defendant's membership in the Aryan Brotherhood constituted constitutional error because there was no connection between that evidence and a relevant aggravating or mitigating factor in the sentencing procedure. *Dawson*, 503 U.S. at 165. But, the Court explained, "[i]n many cases, . . . associational evidence might serve a legitimate purpose in showing that a defendant represents a future danger to society." *Id.* at 166.

Here, even assuming the First Amendment applied to this evidence,[1] Amin's conversations

---

[1] Amin does not explain why this evidence should be protected under the First Amendment in the first place. Even assuming the First Amendment applied to some statements, the First Amendment would not apply to Amin's communications that instruct, solicit, or persuade others to commit crimes of violence, such as when Amin tells others that terrorism is a religious duty or the instructions in his handwritten book about committing identify theft and making murder look like

with others on encrypted messaging platforms about violent extremism, his possession of ISIS propaganda, and his handwritten notebook are relevant to multiple sentencing factors. First, his conversations about violent extremism is relevant to the "nature and circumstances" of his use of the Linux OS, which is an underlying violation. *See* ECF No. 43 at 4; 18 U.S.C. § 3553(a)(1). Second, the nature of those conversations mirrors the conduct for which he was originally sentenced, and the USSG explicitly provides that an upward departure may be appropriate in such circumstances. U.S.S.G. § 7B1.4, Application Note 3. Third, his possession of ISIS propaganda videos that provide instructions on how to carry out lone wolf attacks and his handwritten notebook that provides instructions on hiding bodies and fleeing the country are relevant to whether Amin poses a danger to the public. 18 U.S.C. § 3553(a)(2)(C).

Amin provides no explanation as to how this evidence is unrelated to the sentencing factors in § 3553(a). In all events, it cannot be, as Amin contends, that the Court is categorically barred from considering this relevant evidence because it may touch upon some First Amendment protected activity.

### E. Amin Has Failed to Demonstrate that a Two-Year Sentence Would Produce Unwarranted Sentencing Disparities.

Finally, Amin argues that the Court should consider a smattering of other sentences on supervised release violations from both within and outside of the Fourth Circuit. ECF No. 60 at 18-21. But the Fourth Circuit has repeatedly cautioned against this approach. In *United States v. Sueiro*, -- F.4th --, 2023 WL 1486311 (4th Cir. Feb. 3, 2023), the Fourth Circuit reiterated that "the

---

an accident. *See United States v. Hassan*, 742 F.3d 104, 126 (4th Cir. 2014) ("Words 'that instruct, solicit, or persuade others to commit crimes of violence . . . violate the law and may be properly prosecuted regardless of whether they are uttered in private, or in a public speech, or in administering the duties of a religious ministry.'") (citing *United States v. Stewart*, 590 F.3d 93, 115 (2d Cir. 2009)).

9

district court 'necessarily gave significant weight and consideration to the need to avoid unwarranted disparities' when it carefully reviewed and calculated [the defendant's] guidelines range at the sentencing hearing." 2023 WL 1486311, at *6 (citing *Gall v. United States*, 552 U.S. 38, 54 (2007) (explaining that "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges")). "Courts have repeatedly made clear that comparisons of sentences may be treacherous because each sentencing proceeding is inescapably individualized." *United States v. Friend*, 2 F.4th 369, 382-83 (4th Cir. 2021). "The requirement of procedural reasonableness does not obligate a trial court to engage in case-by-case comparisons of sentences imposed in cases unconnected to the case before the court." *Sueiro*, 2023 WL 1486311, at *6.

Here, Amin presents the Court with a unique factual scenario. Amin received substantial leniency in the form of a downward departure at sentencing and a subsequent reduction in his sentence. And his recent violations involve conduct that is similar to the conduct that led to his prior conviction, which at the very least creates grave concerns that he is in the process of recidivating. Further, Amin went through considerable effort to hide his conduct from the Probation Office. As a result, the Court should consider the guideline range as calculated in the government's position paper—as well as the reasons why an upward departure is appropriate here—and reject Amin's attempt to cherry-pick cases.

//
//
//
//
//

\* \* \* \* \*

For the foregoing reasons, the Court should reject Amin's arguments and sentence him to 24 months' imprisonment, followed by a lifetime of supervised release to include the same standard conditions and special conditions of his current supervised release.

Respectfully submitted,

Jessica D. Aber
United States Attorney

_____/s/_____
Gavin R. Tisdale
Thomas W. Traxler
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone (703) 299-3746
Facsimile (703) 299-3980
Email: Thomas.traxler@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on February 10, 2023, I filed electronically the foregoing with the Clerk of Court using the CM/ECF system, which will serve all counsel of record.

I further hereby certify that, on February 10, 2023, I sent a copy of the foregoing to the following Senior U.S. Probation Officer Frank Weaver via email.

/s/
Gavin R. Tisdale
Assistant United States Attorney